[No. A132447. First Dist., Div. Three. Apr. 16, 2012.]

In re A.G., a Person Coming Under the Juvenile Court Law.
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
Anthony G., Defendant and Appellant.

**COUNSEL**

Janet H. Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Donna Ziegler, County Counsel, and Grace Fong-Mei Tam, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

SIGGINS, J.—Anthony G. (Father) appeals from an order terminating his parental rights as to his son, A.G. He contends the Alameda County Social Services Agency (the Agency) failed to investigate his Native American heritage and provide adequate notice to tribes as required by the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA). The Agency does not dispute that it violated ICWA's inquiry and notice requirements. Instead it raises numerous procedural and equitable arguments against reversal that all turn on Father's participation and conduct in these proceedings. None of the Agency's arguments excuses its failure to comply with ICWA or allow this court to affirm the termination of Father's parental rights without ICWA compliance. Although reversal will further delay and complicate A.G.'s

permanent placement with his prospective adoptive family, the Agency's ICWA violations require us to conditionally reverse the order terminating parental rights and direct the juvenile court to ensure compliance with ICWA's inquiry and notice requirements.

## BACKGROUND

The background of this proceeding from the removal of A.G. and his sister from their parents' care in 2008 through the 2010 order terminating both parents' reunification services and setting a permanency planning hearing (Welf. & Inst. Code, § 366.26)[1] is set forth in our prior opinion denying the parents' petitions to vacate that hearing (*A.G. v. Superior Court* (Apr. 13, 2011, A130940) [nonpub. opn.]). We incorporate that discussion by reference here. In this appeal, we will restrict our statement of facts to those bearing on the adequacy of the ICWA notices.

The mother does not claim any Indian heritage. But an attachment to the initial dependency petition noted that Father had told the Agency that A.G. and his sister might have Indian ancestry. The detention report filed on October 2, 2008, said that Father believed he had Creek heritage, was gathering more information regarding tribal affiliation, and would inform the Agency when he knew more. Father signed a "Parental Notification of Indian Status" form stating he was or might be affiliated with the Choctaw Creek tribe or the Choctaw Creek tribe of Oklahoma. The Agency subsequently filed a "Notice of Child Custody Proceeding for Indian Child" (ICWA-030 form). The ICWA-030 form sent to various Creek and Choctaw tribes[2] stated Father's name and birth date and his mother's name, address, and telephone number. It provided no information about A.G.'s paternal grandfather, great-grandparents, or any other relatives. The notice stated there had been a judicial declaration of parentage and that Father acknowledged he was A.G.'s biological father.

In an addendum report filed on January 7, 2009, in connection with the jurisdictional proceedings, the Agency stated that letters received from various tribes indicated A.G. was not a member of any tribe and that ICWA did not apply. The juvenile court sustained the dependency petition and ordered the Agency to provide reunification services to both parents.

---

[1] All further references to California statutes are to the Welfare and Institutions Code. References to rules are to the California Rules of Court.

[2] The form says the Agency mailed it to the Alabama-Quassarte Tribal Town, the Jena Band-Choctaw, the Choctaw Nation of Oklahoma, the Kailegee Tribal Town, the Mississippi Band of Choctaw Indians, the Poarch Creek Indians, the Muscogee (Creek) Nation of Oklahoma, and the Thlopthlocco Tribal Town.

A hearing on the 12-month and 18-month review began on January 29, 2010, and was conducted over 11 months. The court found the parents were afforded reasonable reunification services, but they had made minimal progress toward alleviating the causes for the children's out-of-home placement. Reunification services were terminated and the court set a section 366.26 hearing for April 14, 2011, with adoption as the permanent plan. On March 11, the court denied a section 388 modification petition filed by a paternal uncle requesting that A.G.'s sister be placed with him.

Both parents petitioned to this court to vacate the order setting the section 366.26 hearing, and we denied their petitions on the merits. On April 14, 2011, the juvenile court terminated both parents' rights as to A.G.'s sister. Her foster parents wished to adopt her and were also open to integrating A.G. into their family. A.G.'s dependency case was extended for another six months while efforts were made to transition him from his placement at the Lincoln Children's Center to his prospective adoptive home. He was placed with the foster parents on May 28, 2011.

A.G.'s section 366.26 hearing was held on June 23, 2011. The foster parents remained committed to adopting him and his sister. The court found that A.G. was likely to be adopted and terminated parental rights.

Father filed a notice of appeal the same day, and identified both the June 23 order and the April 14 order that terminated his parental rights as to A.G.'s sister. On July 25, 2011, the family court granted Father's request to eliminate his child support for A.G., retroactive to June 23.[3] In a prior order, we dismissed as untimely Father's appeal from the April 14 order terminating his parental rights as to A.G.'s sister.

## DISCUSSION

■ Father's sole contention is that the order terminating his parental rights as to A.G. must be reversed because the Agency did not provide notice as required under ICWA. Although the Agency strenuously contested this appeal, it does not dispute that it failed to comply with ICWA's inquiry and notice requirements. Instead, it raises a battery of contentions that arise out of a theory that Father has "renounced" his paternal rights and worked a fraud on the family and juvenile courts. The Agency also says the appeal is barred by res judicata and, in any event, that reversal is not required because its ICWA violations were not prejudicial. These arguments are long on novelty, but short on merit. We are reluctant to impose further delay before this young

---

[3] We take judicial notice of the family court minutes of July 25, 2011, that reflect this order. (Evid. Code, §§ 452, subd. (d), 459.)

child may finally gain permanence and stability in an adoptive family. Unfortunately, the Agency's unexplained failure to follow the law leaves us with no choice. We therefore order a limited reversal and require the Agency to fulfill its ICWA-related duties, as it should have done long ago.

## I. The Notice and Inquiry Violations

█ ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. § 1901 et seq.; *In re Holly B.* (2009) 172 Cal.App.4th 1261, 1266 [92 Cal.Rptr.3d 80].) If there is reason to believe a child that is the subject of a dependency proceeding is an Indian child, ICWA requires that the child's Indian tribe be notified of the proceeding and its right to intervene. (25 U.S.C. § 1912(a); see also Welf. & Inst. Code, § 224.3, subd. (b).)

"Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under the Act irrespective of the position of the parents, Indian custodian or state agencies. Specifically, the tribe has the right to obtain jurisdiction over the proceedings by transfer to the tribal court or may intervene in the state court proceedings. Without notice, these important rights granted by the Act would become meaningless." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421 [285 Cal.Rptr. 507].)

█ Accordingly, federal and state law require that the notice sent to the potentially concerned tribes include "available information about the maternal and paternal grandparents and great-grandparents, including maiden, married and former names or aliases; birthdates; place of birth and death; current and former addresses; tribal enrollment numbers; and other identifying data." (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703 [43 Cal.Rptr.3d 171]; see *In re Mary G.* (2007) 151 Cal.App.4th 184, 209 [59 Cal.Rptr.3d 703].) To fulfill its responsibility, the Agency has an affirmative and continuing duty to inquire about, and if possible obtain, this information. (*In re S.M.* (2004) 118 Cal.App.4th 1108, 1116 [13 Cal.Rptr.3d 606]; § 224.2, subd. (a)(5)(C); 25 C.F.R. § 23.11(d)(3) (2011); rule 5.481(a)(4).) Thus, a social worker who knows or has reason to know the child is Indian "is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.2 . . . ." (§ 224.3, subd. (c).) That information "*shall* include" "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former

addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (§ 224.2, subd. (a)(5)(C).) ▮ Because of their critical importance, ICWA's notice requirements are strictly construed. (*In re Robert A.* (2007) 147 Cal.App.4th 982, 989 [55 Cal.Rptr.3d 74].)

Here, the ICWA-030 notices stated A.G.'s mother's name and birth date, Father's name, former address and birth date, and his mother's name and address. No information regarding other relatives was provided. Instead, the spaces in the notice form for information about the maternal grandparents, paternal grandfather, paternal and maternal great-grandparents, and aunts, uncles, siblings, cousins, stepparents, and other relatives were either marked "No information available" or left blank. Moreover, there is no indication in the Agency's reports of any effort to investigate A.G.'s Indian heritage. The detention report states that Father reported Native American ancestry in his family and that "[h]e is gathering more information regarding tribal affiliation and will let the undersigned know once he has more information," but, despite the Agency's continuing duty of inquiry (§ 224.3, subd. (a); *In re J.D.* (2010) 189 Cal.App.4th 118, 123 [116 Cal.Rptr.3d 545]), there is no indication that it followed up with Father to find out what he might have learned. Nor, apparently, was any effort made to interview any of Father's immediate or extended family members about A.G.'s Indian heritage. These failures are all the more puzzling because several of Father's family members, including his mother, his brother, an aunt and a great-aunt were involved in the proceedings and/or in contact with the Agency. Yet there is no indication that the Agency interviewed them about A.G.'s Indian heritage, and it indisputably failed to identify even these known family members in its notices to the tribes. Error is obvious.

## II. The Agency's Arguments Against Reversal

To forestall the predictable consequence of its ICWA violations, the Agency asserts Father's appeal is "frivolous, a 'sham,' and a fraud upon the Court." It premises this argument on its claim that Father "in effect renounced his parental rights" when he asked the family court to terminate his child support obligation for A.G. one month before the juvenile court terminated his parental rights. Out of perhaps an excess of caution, because it is the textual predicate for almost all of the Agency's arguments, we take judicial notice that on May 23, 2011, Father submitted a handwritten, propria persona request for a family court hearing seeking to terminate child support. Father wrote that there was good cause to recall his earnings assignment because "my parental rights to my children were terminated at the request of Social Services" and "this earning assignment would cause me and my family 4 month old daughter, undue hardship my income is not enough to pay $1,456

in support." Although it is not entirely clear from the Agency's request for judicial notice, it appears that Father may have attached to this request an April 22, 2011 notice stating the Agency's recommendation that his parental rights as to A.G. be terminated at the June 23, 2011 selection and implementation hearing.[4]

According to the Agency, Father's statement that his parental rights had already been terminated when the hearing on termination as to his son was still a month away and would in any event not be final due to Father's possible appeal was a "fraud upon the Family Court," and "[h]e has in effect renounced his parental rights on the minor through his act of obtaining a judgment relieving him of any child support obligation on the minor." The argument betrays a fundamental misperception of our role as a court of review. It succeeds only if we agree that Father's May 2011 representation to the family court that his rights had been terminated, or his efforts thereafter to defend those rights in the juvenile court and on appeal, were fraudulent, rather than attributable to his possible misunderstanding of the relatively byzantine legal proceedings in which he was enmeshed.[5] (See *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 30 [68 L.Ed.2d 640, 101 S.Ct. 2153] [parents involved in the dependency court "are likely to be people with little education, who have had uncommon difficulty in dealing with life . . . ."].)

The argument that Father perpetrated a fraud on the court may seem facile to the county, but is not supported by the record in this case or the proceedings before the family court. Yes, Father filed his request to eliminate his support obligation in May 2011 on the basis that his parental rights were terminated. But it appears that his request was accompanied by copies of the notices of the hearings set for April 14 and June 23, 2011, to select a permanent plan in this case. When he filed the request to eliminate support, his rights to his daughter had already been terminated, and at the hearing held April 14, the dependency court made a finding that as to A.G., "Termination of parental rights would not be detrimental to the minor. Adoption is the appropriate permanent placement goal and is so ordered." Moreover, the family court eliminated Father's support obligation as of June 23, 2011, the same date the dependency court terminated Father's rights as to A.G.

---

[4] As noted *ante* at footnote 3, we have also taken judicial notice of the family court's minutes for July 25, 2011. With the exception of these specified documents, the Agency's request for judicial notice of documents that were not before the juvenile court when it terminated Father's parental rights is denied. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541]; *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1416–1417 [57 Cal.Rptr.3d 863]; *In re Robert A., supra*, 147 Cal.App.4th at p. 990.)

[5] We note that Father's parental rights as to A.G.'s sister were terminated on April 14, 2011, more than a month *before* he requested a hearing on his child support obligation.

■ This record does not prove that Father was engaged in a fraud upon the family court. The Agency's assertion that Father intended to defraud anyone in these circumstances is its own skeptical conjecture and we will not indulge it. More importantly, even if this argument had a reasonable basis in fact, resolving it would require us to engage in factfinding. That is, patently, not a proper function of this court. (*In re Joshua G.* (2005) 129 Cal.App.4th 189, 198 [28 Cal.Rptr.3d 213]; see also *In re Zeth S., supra,* 31 Cal.4th at p. 405 [only in *"exceptional circumstances"* will Court of Appeal make factual findings]; *In re Mary G., supra,* 151 Cal.App.4th at p. 212; *In re Sabrina H., supra,* 149 Cal.App.4th at p. 1416.)

In a related vein, the Agency contends Father's appeal is barred by the "disentitlement doctrine" because of the "attitude of contempt" for the family court it reads into his request to terminate child support, and his tenacity in continuing to appeal the termination of his parental rights "after he obtained a judgment extinguishing his obligation to pay child support based on the termination of his parental rights." This argument is equally misguided.

■ Under the disentitlement doctrine, a reviewing court has the inherent discretionary power to dismiss an appeal when the appellant has refused to comply with trial court orders. The doctrine thus "prevents a party from seeking assistance from the court while that party is in an attitude of contempt to legal orders and processes of the court" and " 'may be applied when the balance of the equitable concerns make it a proper sanction.' " (*In re Z.K.* (2011) 201 Cal.App.4th 51, 63 [133 Cal.Rptr.3d 597].) It has no application here. "In dependency cases the doctrine has been applied *only in cases of the most egregious conduct by the appellant that frustrates the purpose of dependency law and makes it impossible for the court to protect the child or act in the child's best interests*" (*ibid.,* italics added), typically when the appellant has abducted the child whose care and custody is at issue. (See *ibid.*) This is not such a case. Nothing in the record indicates Father has violated any order of any court and, as explained above, this is not a proper forum in which to seek a factual finding that his request for termination of child support was fraudulent, contumacious, or intended as a "renunciation" of his parental rights.[6] Nor can we fathom any sense in the Agency's claim that Father's alleged "conduct in renouncing his paternity made it impossible for the court to make any ICWA determination" when the Agency said ICWA did not apply *more than two years earlier.* To the contrary, what prevented the court from properly considering ICWA placement was the lack of

---

[6] The Agency also claims Father's purported "renunciation" deprives him of standing to pursue this appeal, since he cannot really be aggrieved by an order terminating a right he voluntarily renounced. The factual (if not fanciful) nature of this characterization of Father's child support petition is as fatal to this claim as it is to the Agency's fraud and disentitlement arguments.

adequate notice to the tribes, and that was occasioned solely by the Agency's failure to carry out its clearly defined obligations.

■ Nor is Father's ICWA claim barred by res judicata because he could have, but did not, raise it in an appeal from the earlier termination of his parental rights as to A.G.'s sister. ICWA notice issues cannot be forfeited for appeal by a parent's failure to raise them in the juvenile court, because it is the tribes' interests, not the parents', that is at stake in dependency proceedings that implicate ICWA. (*Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 783, fn. 1 [53 Cal.Rptr.3d 251]; *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267 [121 Cal.Rptr.2d 820]; *In re Marinna J.* (2001) 90 Cal.App.4th 731, 738–739 [109 Cal.Rptr.2d 267].) As explained in *Marinna J.*, tribes that are not notified of the dependency proceedings cannot assert their rights under the act. (*Marinna, J.*, at p. 739.) "Under these circumstances, it would be contrary to the terms of the Act to conclude . . . that parental inaction could excuse the failure of the juvenile court to ensure that notice under the Act was provided to the Indian tribe named in the proceeding." (*Ibid.*)

■ This same reasoning compels the conclusion that a judgment in a dependency case is not a res judicata bar to ICWA claims in a sibling's case where a lack of adequate notice deprived the potentially implicated tribes of the opportunity to protect their interest in the children in either litigation. (See *In re Y.R.* (2007) 152 Cal.App.4th 99, 110 [60 Cal.Rptr.3d 820], disapproved on another point in *In re S.B.* (2009) 46 Cal.4th 529, 537, fn. 5 [94 Cal.Rptr.3d 24, 207 P.3d 525] [res judicata applies only if the precluded party had full and fair opportunity to litigate the issue].) The Agency's argument that this appeal is not justiciable because res judicata bars Father's ICWA claim is simply an elaboration on the res judicata argument and fails for the same reason. The Agency's citation to *In re Anthony H.* (2005) 129 Cal.App.4th 495 [28 Cal.Rptr.3d 575] and *Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839, 854 [60 Cal.Rptr.3d 486] is inapt and unhelpful, as neither case concerns violations of ICWA.

■ Finally, the Agency maintains that its failure to comply with ICWA was harmless error. This is so, it first asserts, because Father has not proven his biological paternity. The record demonstrates that Father is A.G.'s biological father (as well as his presumed father) on evidence that included statements made *by the Agency* under penalty of perjury, and the Agency has not appealed that finding. Curiously, it now contends its earlier statements about Father's paternity (which it made under penalty of perjury) were "plainly erroneous" because "[t]he record shows no biological paternity testing." Moreover, this contention presupposes that ICWA's inquiry and notice requirements apply only if an acknowledged father who claims

possible Indian heritage provides genetic testing as proof of his biological parenthood. That is not the law. To the contrary, ICWA notice requirements are triggered whenever "the court . . . *has reason to know* that an Indian child is involved" (25 U.S.C. § 1912(a), italics added; Welf. & Inst. Code, § 224.2, subd. (a), italics added), which, by statute, includes when a family member "provides information *suggesting* . . . one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b), italics added.)

The Agency also argues that, under *In re N.E.* (2008) 160 Cal.App.4th 766, 770 [73 Cal.Rptr.3d 123], its failure to make the required inquiries and provide appropriate notice to the implicated tribes is necessarily harmless error because Father has not made an "affirmative representation that further information showing Indian connection sufficient to invoke ICWA is indeed available," or "sa[id] what that information is." This argument is also meritless. *In re N.E.* asked whether a purported violation of ICWA's inquiry obligation was prejudicial where there was "absolutely no suggestion by [the father] that he in fact has any Indian heritage." Under those circumstances, the court declined to reverse for additional ICWA inquiry. It explained: "Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, *without any showing whatsoever that the interests protected by the ICWA are implicated in any way.* [¶] *The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis. In the absence of such a representation,* there can be no prejudice and no miscarriage of justice requiring reversal." (160 Cal.App.4th at p. 770.) Here, in sharp contrast, Father expressed his claim of Indian heritage from the beginning, and he provided the Agency with sufficient information to trigger its obligation to make further inquiry. (See § 224.3, subd. (c); rule 5.481(a)(4).)

The Agency is right on one point. It observes that reversal for ICWA compliance now hardly serves the "strong policy in dependency cases that they 'be resolved expeditiously' . . . , and the fundamental objective of California's dependency system to minimize delay in the proceedings." Indeed, reversal for ICWA compliance at this late stage in A.G.'s dependency proceedings is antithetical to these concerns. "Noncompliance with ICWA has been a continuing problem in juvenile dependency proceedings conducted in this state, and, by not adhering to this legal requirement, we do a disservice to those vulnerable minors whose welfare we are statutorily mandated to protect." (*In re I.G.* (2005) 133 Cal.App.4th 1246, 1255 [35 Cal.Rptr.3d 427].) This case is an example of the Agency's noncompliance that needlessly delays a victimized child's ability to find security and stability in a permanent home. The cost is disruption and trauma for both the child and his caretakers. Reluctantly, therefore, but with no choice in the matter, we

remand the matter for the Agency to make adequate inquiry and send ICWA-compliant notice to all relevant tribes. We cannot help but regret the Agency's choice to push ahead with this appeal in spite of such patent noncompliance with ICWA and its questionable strategy of claiming its failures are all Father's fault. To what end?

## DISPOSITION

The order terminating father's parental rights as to A.G. is reversed. The juvenile court is directed to order the Agency to investigate and obtain complete and accurate information about paternal relatives and to provide corrected ICWA notices to the relevant tribes. If a tribe intervenes after receiving proper notice, the court shall proceed in accordance with ICWA. If no tribes intervene after receiving proper notice, the order terminating Father's parental rights shall be reinstated.

McGuiness, P. J., and Jenkins, J., concurred.

On April 20, 2012, the opinion was modified to read as printed above.