Filed 2/18/15  In re Omar H. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re OMAR H., a Person Coming Under the Juvenile Court Law. | B257871 |
| | (Los Angeles County Super. Ct. No. DK04383) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent. <br><br> v. <br><br> OMAR H., <br><br> Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County. Marguerite D. Downing, Judge.  Reversed and remanded.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and David Nakhjavani, Deputy County Counsel for Plaintiff and Respondent.

Appellant and father Omar H. (father) appeals from a judgment of the juvenile court declaring his minor son Omar D.H. (Omar) a dependent of the juvenile court and removing him from his parents' custody. Father's sole contention on appeal is that although the juvenile court had reason to know that Omar might be an Indian child, the court failed to assure compliance with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). We agree and reverse for the sole purpose of directing the juvenile court and the Department of Children and Family Services (the Department) to comply with the inquiry and notice requirements of ICWA.

## BACKGROUND

Omar and his half-sister Rosie P. were detained in April 2014, and a dependency petition was filed to bring them within the jurisdiction of the juvenile court pursuant to Welfare and Institutions Code, section 300, subdivisions (a) and (b).[1] This appeal concerns only Omar, as Rosie has been placed in the custody of her father, Efrain P. Omar was placed in the home of his paternal aunt, Tatiyana H. pending the proceedings. The petition alleged that Vanessa P. (mother) was an abuser of illicit drugs, that father abused marijuana, and that mother and father placed Omar in a detrimental and endangering situation on March 24, 2014, by having a violent altercation in Omar's presence.[2]

Father was not present at the detention hearing. The juvenile court ordered Omar detained and ordered the Department to provide family reunification services for father. Father was in court for the next hearing on May 14, 2014, when he submitted to the court's jurisdiction. He provided an ICWA-020 form to the court, indicating he may have Blackfeet Indian ancestry.[3] On the same date, the Department filed a report in

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]     Mother is not a party to this appeal.

[3]     The Blackfeet Tribe of the Blackfeet Indian Reservation of Montana is a federally recognized tribe. (See 79 Fed.Reg. 4748-4749 (Jan. 29, 2014).)

2

which the dependency investigator (DI) wrote: "Father . . . indicated his paternal grandfather had Native American heritage. He stated neither he nor his grandfather were registered. Father was able to provide only very limited information and referred this DI to his mother, with whom this DI has been unable to make contact . . . to date." The court found that ICWA might apply to Omar and ordered the Department to "follow up on ICWA."

The parties next appeared in court on June 16, 2014. When counsel for the Department told the court essentially what was contained in the month-old report: that the DI had spoken to father regarding his possible Blackfeet ancestry, but father did not have any specific information, so he referred her to his mother. Counsel represented that the Department telephoned paternal grandmother a few times but did not hear back from her. With that information the court replied that, it had "no reason to know" that ICWA applied. The following was included in the court's minute order: "The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the [Bureau of Indian Affairs]. Parents are to keep the Department, their Attorney and the Court aware of any new information relating to possible ICWA status. JV-020, the Parental Notification of Indian Status is signed and filed." The court scheduled a contested jurisdiction/disposition hearing.

At the combined jurisdiction/disposition hearing on July 15, 2014, the juvenile court sustained the allegations of the petition and declared both children dependents of the court. No ICWA notices were sent and the Department apparently conducted no further inquiry of father or paternal grandmother, as counsel for the Department merely repeated the information obtained from the DI prior to the June 16 hearing. Father was present but not questioned. The court found "that Omar is an Indian child," apparently intending to state that Omar was *not* an Indian child, as that finding followed the court's statement that it had no reason to know that ICWA applied. Further, the minute order contained the identical language as the minute order of June 16, 2014 (quoted above). Pursuant to the court's dispositional order Rosie remained in her father's custody and

3

Omar remained in the custody and under the supervision of the Department. The court approved the reunification plan. Father filed a timely notice of appeal.

## DISCUSSION

Father's sole contention is that the trial court erred in failing to comply with the notice requirements of ICWA. We agree.

Under ICWA, if there is reason to believe a child who is the subject of a dependency proceeding is an Indian child, the child's Indian tribe must be notified of the proceeding and its right to intervene. (25 U.S.C. § 1912(a); see also § 224.3, subd. (b).) If the identity or location of the tribe cannot be determined, the notice must be given to the Bureau of Indian Affairs (BIA). (25 U.S.C. § 1912(a).) Further, the social services agency has an affirmative and continuing duty to investigate and obtain, if possible, the information necessary to give the required notices. (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1396; § 224.2, subd. (a)(5)(C); 25 C.F.R. § 23.11(d)(3) (2015); Cal. Rules of Court, rule 5.481(a)(4).) A "minimal showing" is all that is required to trigger inquiry and notice obligations under ICWA. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254, 258 (*Dwayne P.*).) The bar is very low and may be met by the mere suggestion of Indian ancestry. (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1408.) Indeed, a father's suggestion that his child's paternal great-grandparent had unspecified Native American ancestry is enough to trigger ICWA notice requirements, even though birth date, birthplace, or the enrollment status of the great-grandparent is unknown. (*Id.* at pp. 1405-1408.)

Without citing authority, respondent contends that the notice provisions of ICWA were not triggered because father told the Department that neither he nor his paternal grandfather was a *registered* member of the tribe. It is the tribe which determines membership or eligibility for membership in a tribe, not father. (See § 224.3, subd. (e)(1).) Parents are not necessarily knowledgeable about the tribe's requirements for membership. (*Dwayne P., supra*, 103 Cal.App.4th at p. 258.) As no notice was sent in this case to the Blackfeet tribe, there is no indication in the record that registration of the parent, grandparent or great-grandparent is required for membership in that tribe or that

the child is not eligible for registration. In any event, registration is not required to trigger ICWA. (*Id*. at pp. 257-258.)

Relying on *In re O.K.* (2003) 106 Cal.App.4th 152, respondent also contends that the information father gave was too vague to trigger the ICWA notice requirements. In the cited case the information was provided by the paternal grandmother, who simply stated "that the father 'may have Indian in him.'" (*Id*. at p. 157.) Here, the information was given by father about his grandfather, and he named the Blackfeet Tribe. Father gave "limited information" but there is no indication in the record exactly what information he gave or failed to give, and there is no indication in the record that the Department even asked father for anything as basic as the grandfather's name or birthplace. In any event, the obligation to provide notice to the Blackfeet tribe was triggered simply by father's naming that tribe on the ICWA-020 form and indicating possible Indian ancestry. (See *In re L.S.* (2014) 230 Cal.App.4th 1183, 1197-1198; § 224.3, subd. (b)(1).)

Moreover the information father gave was at least sufficient to trigger the Department's obligation to investigate further. (See § 224.3, subd. (a) & (c).) A social worker need not conduct a comprehensive investigation, but "'is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents . . . and extended family members to gather the information' required to be provided in the ICWA notice. [Citation.]" (*In re C.Y.* (2012) 208 Cal.App.4th 34, 39, quoting § 224.3, subd. (c).) The Department did not document what information it requested of father or what efforts it made to speak with any relatives other than an unspecified number of telephone calls to paternal grandmother. Even assuming that the Department made all reasonable efforts but could not obtain additional information, it was not relieved of its obligation to notify the Blackfeet Tribe of whatever

5

information it possessed.  (See *In re Gerardo A*. (2004) 119 Cal.App.4th 988, 995.)[4]  The tribe must be given the opportunity to conduct its own investigation.  (*Id*. at pp. 994-995.)

"The responsibility for compliance with the ICWA falls squarely and affirmatively on the court and the Department.  [Citations.]"  (*Justin L. v. Superior Court* (2008) 165 Cal.App.4th 1406, 1410; § 224.3, subd. (a).)  As the record is devoid of evidence that the Department or the court fulfilled its responsibility, there must be a limited remand for the juvenile court to assure that the appropriate inquiries are made and that the required notices are properly given, and then for the court to determine whether Omar is an Indian child.  (*Justin L., supra*, at pp. 1410-1411.)

## DISPOSITION

The judgment of the juvenile court is reversed.  On remand, the juvenile court is directed to vacate its prior ruling that ICWA did not apply, and to conduct further proceedings consistent with the views expressed in this opinion.  The court is ordered to direct the Department to make the appropriate inquiry of father and paternal relatives, properly serve the required notices, and notify the court of any response from the tribe or the BIA.  The court shall then determine whether the child is an Indian Child.  If the juvenile court determines that the child is not an Indian child or the tribe declines to intervene, it shall reinstate its dispositional findings and orders.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:

_____, Acting P. J.     _____, J.
ASHMANN-GERST                              HOFFSTADT

---

[4]     It is likely the Department knew the child's name, birth date, birthplace, the parents' names, and the name of the paternal grandmother the social worker attempted to contact; and father, had he been questioned, may have remembered his grandfather's name.