Filed 8/12/15  In re Esther O. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re ESTHER O., a Person Coming Under the Juvenile Court Law. | B260763 c/w B262558 (Los Angeles County Super. Ct. No. CK95487) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOHN C., Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Carlos E. Vasquez, Judge.  Affirmed and remanded with directions.

Cristina Gabrielidis, under appointment by the Court of Appeal, and John C., in pro. per., for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

# INTRODUCTION

John C. (Father) appeals from an order continuing a contested selection and implementation hearing (Welf. & Inst. Code, § 366.26[1]) (appeal No. B260763) and an order terminating his parental rights over his daughter, Esther O., pursuant to section 366.26 (appeal No. B262558).

In appeal No. B260763, Father contends the juvenile court failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.).[2]  In appeal No. B262558, Father's counsel filed an opening brief in which no issues were raised, and Father personally filed a letter brief in which he raised issues he wanted the court to consider.  (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.)

On July 8, 2015, we consolidated the appeals.

We affirm the order continuing the section 366.26 hearing and conditionally affirm the order terminating Father's parental rights.  We remand for further proceedings to ensure compliance with ICWA.

# FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2012, five-year-old Esther and her three half-siblings were detained after the Los Angeles County Department of Children and Family Services (DCFS) held a Team Decision Making Meeting at which their mother, Joey O. (Mother),[3] consented to detention of the children.  Mother had an acknowledged drug problem which affected her ability to care for the children, and she admitted the children would be

---

[1]     Unless otherwise specified, all further statutory references are to the Welfare and Institutions Code.

[2]     DCFS moved to dismiss the appeal as untimely.  On May 27, 2015, we denied the request.

[3]     Neither Mother nor any of Esther's half-siblings are involved in this appeal.

better off in protective custody while she worked on her sobriety. Mother stated that Father was incarcerated for kidnapping, and Esther was placed in foster care.

DCFS filed a section 300 petition on September 14, 2012. That petition was subsequently dismissed and DCFS filed the first amended petition on October 17, 2012. The first amended petition alleged in part that the children were at risk of serious physical harm or illness as a result of Mother's inability to supervise or protect them adequately due to her illicit drug use and physical abuse of the children. (§ 300, subd. (b).) It alleged Esther was at risk because Father's history of drug abuse rendered him incapable of providing regular care for her. (*Ibid.*) The first amended petition noted that Father was currently incarcerated in Kern Valley State Prison.

A dependency investigator (DI) reported that she spoke to Father on October 12, 2012. Father stated that he had Apache and Comanche ancestry through his mother's side of the family, but he did not know if his mother was registered with a tribe. He added that he had a very small percentage of Indian ancestry and there was no one in his family who could provide additional information as both his parents and grandparents were deceased. Father also stated that he did not have a support system because he was in prison. His scheduled release date was 2027. He told the DI that he had four siblings.

At the October 29, 2012 jurisdiction/disposition hearing, the juvenile court sustained the allegations under section 300, subdivision (b), as to Mother and ordered the children removed from her custody. It ordered Esther placed with her older sister in the home of the sister's paternal grandparents. The court held the proceedings in abeyance as to Father and ordered him transported to court for a jurisdiction/disposition hearing on December 7, 2012.

Father waived his right to appear at the December 7, 2012 hearing. The court declared Father to be Esther's biological father. The court found Father to be nonoffending and dismissed the allegations as to him without prejudice. It denied him reunification services pursuant to section 361.5, subdivision (a). Father indicated that he may have Indian ancestry. The court ordered DCFS to submit a report addressing the

3

issue and to follow up on his claim and send ICWA notices if there was sufficient information to notice tribes.

On January 16, 2013, the DI reported that she had twice submitted a request for a phone interview with Father, but her requests were not processed. She mailed him a copy of the ICWA questionnaire with instructions on how to fill it out and a request that he return it as soon as possible. Additionally, because of time limitations, she mailed ICWA notices to the Apache and Comanche tribes, as well as to the Bureau of Indian Affairs and the Department of the Interior. The notices included the information Father had reported to the DI. They listed his name, date of birth and birthplace, and his mother's name, Irene O.

At the January 16 hearing, the court stated that it had read the ICWA information submitted for the hearing. The case was continued to April 30 to allow DCFS to submit any information it received in response to the ICWA notices.

At the April 30 hearing, the court granted the paternal uncle, Randy C., permission to take Esther to visit Father at the prison. The case was continued to allow DCFS to submit ICWA information.

In a supplemental report dated July 2, 2013, DCFS submitted proof that the ICWA notices had been delivered. DCFS reported that two of the tribes sent letters indicating that none of the people listed on the notices was eligible for enrollment in the tribe. DCFS concluded, "[b]ased on all the information received it appears that ICWA does not apply . . . ."

At the July 2 hearing, the juvenile court noted it had read the supplemental report. It found there was "no reason to know that" Esther was an Indian child, and that "ICWA does not apply."

A status review report dated March 14, 2014 noted that Randy C. had been visiting with Esther twice a month. Esther wanted to have weekend and extended visits with Randy C. at his home in Selma, California. The juvenile court ordered DCFS to confer with Randy C. and Esther's caretaker regarding Esther's visits with Father.

4

On April 23, 2014, the court ordered DCFS "to assess Esther's paternal great grandparents Rudy [and] Elisa C[.] for overnight visits with Esther at their home, etc." DCFS was "also to assess Esther's great uncle Randy C[.[4]] for overnight visits with Esther at his home in Selma, CA [and] otherwise as appropriate." Finally, DCFS was "to assess great uncle Randy C[.'s] son Angel C[.] for unmonitored [and] overnight visits w[ith] Esther."

On May 12, 2014, the juvenile court held a section 366.22 hearing. It ordered DCFS to provide permanent placement services for the children and set a section 366.26 selection and implementation hearing.

Esther and her older sister remained placed with the sister's paternal grandparents, who wanted to adopt both girls. Father had not been involved in Esther's life except when Randy C. brought her to visit him in prison. Mother had only partially complied with her case plan and had failed to demonstrate that she was capable of caring for the children. DCFS recommended that Esther be placed for adoption.

Father appeared at the September 8, 2014 selection and implementation hearing. The hearing was continued to November 13, 2014, and Father was not present at that hearing. The case was continued for 90 days.

Father filed a notice of intent to file writ petition challenging the November 13, 2014 minute order. The court processed it as a notice of appeal.[5]

The adoption home study for Esther and her older sister was approved on February 12, 2015.

---

[4]    Randy C. is sometimes identified as the paternal uncle and sometimes as the paternal great uncle.

[5]    Writ review is available to challenge an order under section 366.22 setting a section 366.26 hearing. (Cal. Rules of Court, rules 8.450, 8.452.) Because Father did not file a notice of intent to file a writ petition challenging the May 12, 2014 order under section 366.22, the court treated his notice of intent as a notice of appeal from the November 13, 2014 order.

Father was present at the continued hearing on February 18, 2015. His counsel declined the opportunity to present additional evidence on the issue of termination of parental rights. The juvenile court found Esther to be adoptable and that it would be detrimental for her to be returned to her parents. It found no exception to termination of parental rights existed. Father's counsel objected to termination of parental rights on his behalf. The court terminated Father and Mother's parental rights over Esther.

Father filed his notice of appeal of the February 18, 2015 order terminating his parental rights on February 25, 2015.

## DISCUSSION

### A. *The Order Continuing the Section 366.26 Hearing*

Under section 352, the juvenile court may grant a continuance of any hearing upon a showing of good cause.[6] The record reflects that the juvenile court continued the section 366.26 hearing so that the home study regarding Esther's adoptive parents could be completed. We review the juvenile court's order continuing the section 366.26 hearing for abuse of discretion. (See *In re Z.S.* (2015) 235 Cal.App.4th 754, 773; *In re B.C.* (2011) 192 Cal.App.4th 129, 143-144.) Father raises no argument that the juvenile court lacked good cause to grant the continuance, and we perceive no abuse of discretion in the order. We therefore affirm the order. Father argues only that DCFS failed to adequately investigate Esther's Indian ancestry as required by ICWA, an issue we discuss below in connection with Father's appeal of the order terminating his parental rights.

---

[6] Section 352, subdivision (a), provides, in part: "Upon request of counsel for the parent, guardian, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. . . . [¶] Continuances shall be granted only upon a showing of good cause . . . ."

**B.** *The Order Terminating Parental Rights*

As previously stated, in the appeal of the order terminating Father's parental rights, Father's counsel filed an opening brief in which no issues were raised, and Father personally filed a letter brief in which he raised issues he wanted the court to consider. (*In re Phoenix H.*, *supra*, 47 Cal.4th at p. 844.)  We separately take up the issue of compliance with ICWA,[7] and the other issues raised in Father's letter brief.

    1.  ICWA

Father contends that DCFS did not adequately investigate Esther's Indian ancestry as required by ICWA.  Specifically, he asserts that DCFS should have interviewed his family members in an attempt to ascertain additional family information to provide in the notice to the tribes.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes and families.  Minimum federal standards, both substantive and procedural, effectuating these policies are set forth in the ICWA." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 469.)  Under ICWA, it is presumed that "it is in the best interests of the child to retain tribal ties and cultural heritage and in the best interest of the tribe to preserve its future generations, a most important resource." (*Ibid.*; see also *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1466.)  Therefore, "[t]o ensure a tribe's right to intervene [in proceedings where an Indian child is involved], the ICWA requires 'where the court knows or has reason to know that an Indian child is involved,' the party seeking termination of parental rights must, in relevant part, notify the Indian child's tribe of the pending proceedings and its right to intervene." (*In re Desiree F.*, *supra*, at p. 469.)  This

---

[7]    Because Father's counsel filed a brief under the authority of *In re Phoenix H.*, *supra*, 47 Cal.4th 835, DCFS did not respond to the issues raised in Father's brief.  We do not find it necessary to order further briefing from DCFS on the issue of ICWA compliance, however, as DCFS fully briefed that issue in response to the appeal of the order continuing the section 366.26 hearing.  The two appeals are now consolidated, and we have the DCFS briefing regarding ICWA before us for consideration.

notice "enables the tribe to investigate and determine whether the minor is an Indian child" and gives the tribe the opportunity to intervene. (*Id.* at p. 470; accord, *In re Hunter W.*, *supra*, at p. 1466.)[8]

"In the context of juvenile dependency proceedings, notice to Indian tribes is governed by both federal and state law. ICWA provides that if 'the court knows or has reason to know that an Indian child is involved' in an involuntary state court proceeding, 'the party seeking foster care placement of, or termination of parental rights to, an Indian child shall notify . . . the Indian child's tribe . . . .' (25 U.S.C. § 1912(a).) Section 224.2, subdivision (b) reiterates that '[n]otice shall be sent whenever it is known or there is reason to know that an Indian child is involved, and for every hearing thereafter . . . unless it is determined that [ICWA] . . . does not apply to the case [in accordance with section 224.3].'" (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.)

Under section 224.3, a duty to make further inquiry regarding the possible Indian status of the child is triggered when the court has reason to know that an Indian child is involved in the proceedings. (*Id.*, subd. (c).) Under subdivision (b) of section 224.3, "[t]he circumstances that may provide reason to know the child is an Indian child include, but are not limited to, the following: [¶] (1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe."

---

[8] We agree with Father that the issue of compliance with ICWA was not waived by his failure to raise it below or to appeal from the order initially determining that ICWA did not apply. "'Case law is clear that the issue of ICWA notice is not waived by the parent's failure to first raise it in the trial court.' [Citation.]" (*In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1166; accord, *In re. D.W.* (2011) 193 Cal.App.4th 413, 417.) We note that this issue is currently before the Supreme Court in *In re Isaiah W.* (2014) 228 Cal.App.4th 981, review granted October 29, 2014, S221263.

"One of the primary purposes of giving notice to the tribe is to enable it to determine whether the minor is an Indian child. [Citation.] Notice is meaningless if no information or insufficient information is presented to the tribe. [Citation.] The notice must include the name, birthdate, and birthplace of the Indian child; his or her tribal affiliation; a copy of the dependency petition; the petitioner's name; a statement of the right of the tribe to intervene in the proceeding; and information about the Indian child's biological mother, biological father, maternal and paternal grandparents and great-grandparents or Indian custodians, including maiden, married and former names or aliases, birthdates, places of birth and death, current and former addresses, tribal enrollment numbers, and/or other identifying information. [Citations.] [¶] The social worker has 'a duty to inquire about and obtain, if possible, all of the information about a child's family history' required by [ICWA]." (*In re S.M.* (2004) 118 Cal.App.4th 1108, 1115-1116, fn. omitted; accord, *In re A.G.* (2012) 204 Cal.App.4th 1390, 1396-1397.) In the absence of this information, the tribe cannot "conduct a meaningful search" to determine whether the child is an Indian child. (*In re S.M.*, *supra*, at p. 1116.)

The record shows that the ICWA notices here included the information Father had reported to the DI: his name, date of birth and birthplace, and his mother's name, Irene O. We agree that these notices may not have "included sufficient information that would allow the tribes or the [Bureau of Indian Affairs] to determine [Esther's] membership or eligibility for membership." (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703; accord, *In re A.G.*, *supra*, 204 Cal.App.4th at p. 1397.) However, they included all the information Father provided. The question is whether DCFS fulfilled its duty of inquiry.

Father told a DI that he had a very small percentage of Indian ancestry, specifically Apache and Comanche ancestry through his mother's side of the family, but he did not know if his mother was registered with a tribe. He said there was no one in his family who could provide additional information as both his parents and grandparents were deceased. He also told the DI that he had four siblings.

Father points out that other family members—the paternal uncle, Randy C., his son Angel C., and the paternal grandparents Rudy and Elisa C.—"were active during this

dependency and known to the social worker and the juvenile court." Father states: "None of these relatives were contacted regarding [the] ICWA notice. Why the social worker never once asked any of these relatives about their Indian ancestry, despite all of those contacts, is bizarre and inexcusable." (See *In re A.G.*, *supra*, 204 Cal.App.4th at p. 1397.)

The record is unclear whether the relatives participating in the dependency proceedings were related to Father on his mother's side—the side of the family from which Father claimed Indian ancestry. Randy C. is described in the record both as Esther's paternal uncle, and as her great-uncle. In Father's reply brief, he describes Randy C. as his sibling but does not cite anything in the record to support that claim.

This case bears some similarity to *In re A.G.*, *supra*, 204 Cal.App.4th 1390, in which the court noted that "several of Father's family members, including his mother, his brother, an aunt and a great-aunt were involved in the proceedings and/or in contact with the Agency. Yet there is no indication that the Agency interviewed them about A.G.'s Indian [ancestry], and it indisputably failed to identify even these known family members in its notices to the tribes. Error is obvious." (*Id*. at p. 1397.) Here, the record is unclear whether Father's sibling was involved in the proceedings or in contact with DCFS, and Father stated that there was no one in the family who could provide additional information.

However, in the letter brief Father submitted on appeal from the order terminating his parental rights, Father states: "The court keeps stating in appeal that I said my grandparents are all dead and I can not [*sic*] prove or give any information to prove Indian [ancestry] which is not true, 3 of my 4 grandparents are still alive and well including my grandfather who is [N]ative [A]merican and who can be easily contacted." This statement suggests that DCFS did not fulfill its duty of inquiry. DCFS does not direct us to any part of the record containing a copy of the ICWA questionnaire which was sent to Father. Neither does the record reflect whether Father received the form or returned it with information as to his Native American grandfather.

10

At a minimum, DCFS should have followed up with Father to obtain the completed ICWA questionnaire to ensure that it had all relevant information to provide to the tribes to enable them to make the determination whether Esther was an Indian child. (See *In re A.G.*, *supra*, 204 Cal.App.4th at p. 1397.)  Its failure to do so requires a limited remand for DCFS to fulfill its duties of inquiry and notice.

2.  Additional Issues

We now address the additional issues raised in Father's letter brief.  Father's main contention is that his trial counsel provided him with ineffective assistance, in part by failing to make any objections on his behalf, by trying to persuade him not to attend the proceedings and telling him that he was an alleged father and had no rights, and by failing to address the ICWA issue adequately.  With the exception of the ICWA issue addressed above, none of the things Father complains of appears in the record.

It is well established that "'"'[f]or an appeal to engage the consideration of an appellate court, it must be brought up on a record which, in addition to being otherwise formally sufficient, shows the error calling for correction.  Such error is never presumed, but must be affirmatively shown, and the burden is upon the appellant to present a record showing it, any uncertainty in the record in that respect being resolved against him.'"'" [Citation.]" (*In re Raymundo B.* (1988) 203 Cal.App.3d 1447, 1452; accord, *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.)

The record here does not reflect any attempt by Father's trial counsel to persuade him not to attend trial or telling him he was only an alleged father and had no rights.  It shows that when initially contacted, Father signed a form stating:  "I want visitation rights to see my daughter but do not want to attend any court dates."  Father waived his right to appear at the December 7, 2012 jurisdiction/disposition hearing by signing a waiver form.  The court at that time declared Father to be Esther's biological father.

The record further shows that Father was present at the section 366.26 hearing on February 18, 2015.  His counsel declined the opportunity to present additional evidence on the issue of termination of parental rights.  Father did not request the opportunity to

11

address the court regarding his concerns about his counsel's representation or any of the other issues he raises on appeal. Hence, the record on appeal in insufficient for us to determine whether Father's trial counsel was ineffective.[9]

Father next contends that the juvenile court denied him reunification services without cause, as he was nonoffending. Under section 361.5, subdivision (a), the juvenile court is required to order reunification services for a "statutorily presumed father," and "may order services for the child and the biological father, if the court determines that the services will benefit the child." As a biological father, Father was not entitled to reunification services, even though he was nonoffending. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 451; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 954.) Father points to no evidence in the record that reunification services would have benefited Esther.

Additionally, Father never appealed from the disposition order denying him reunification services. His failure to do so forfeited any challenge to the denial of reunification services. (See *In re T.W.* (2011) 197 Cal.App.4th 723, 729; *In re Athena P.* (2002) 103 Cal.App.4th 617, 625.)

Father also objects that Esther's current caregiver is not a biological relative, despite many biological relatives being available to care for her. He asserts that the court should have considered placing her with one of these relatives before placing her with a non-relative. However, there is nothing in the record indicating that Father requested that Esther be placed with her biological relatives or that any of these relatives requested that Esther be placed with them rather than just requesting visitation.

Moreover, the rights of Esther and her unnamed biological relatives to maintain a relationship is not an issue that Father can raise on appeal from the order terminating his parental rights. (*In re Devin M.* (1997) 58 Cal.App.4th 1538, 1541; *In re Jasmine J.*

---

9       A claim of ineffective assistance of counsel may be raised by a petition for writ of habeas corpus where "'[t]he establishment of ineffective assistance of counsel . . . requires a presentation which goes beyond the record of the trial.'" (*In re Darlice C.* (2003) 105 Cal.App.4th 459, 463.)

(1996) 46 Cal.App.4th 1802, 1807.) Father can only raise issues affecting his own rights. (*In re Devin M.*, *supra*, at p. 1541; *In re Jasmine J.*, *supra*, at p. 1806.)[10]

Father additionally points to the exception to termination of parental rights provided by section 366.26, subdivision (c)(1)(B)(i), which applies when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." The record established that Father maintained only sporadic visitation with Esther, and there is no evidence of regular contact between the two. Father presented no evidence or testimony at the section 366.26 hearing to support a finding that continuing the relationship between Esther and him "will promote the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.) "A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent." (*Ibid.*) Father did not establish the existence of the exception to termination of parental rights.

## DISPOSITION

The order continuing the section 366.26 hearing is affirmed. The order terminating Father's parental rights as to Esther is conditionally affirmed. The case is remanded with directions that the juvenile court order DCFS to investigate information

---

[10] In *In re Erik P.* (2002) 104 Cal.App.4th 395, 402, the court recognized that, if timely raised, a parent has standing to assert the exception to termination of parental rights under then subdivision (c)(1)(E) of section 366.26 concerning interference with a child's sibling relationship, a position not asserted here or in the juvenile court. Even under that scenario, the parent's standing is based on the fact he or she is directly aggrieved by termination of parental rights if the trial court erred in determining that the exception did not apply. (*Ibid.*)

about paternal relatives and to provide corrected ICWA notices to the relevant tribes.  If no response to the ICWA notices is received, or if the response is negative, no further action need be taken.  If after proper notice Esther is determined to be an Indian child, the juvenile court is ordered to vacate the order terminating Father's parental rights and proceed in conformity with all provisions of ICWA.


                              STROBEL, J.*


We concur:


          PERLUSS, P. J.


          SEGAL, J.


---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.