Filed 1/12/21  In re K.T. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re K.T. et al., Persons Coming Under the Juvenile Court Law. | B304405 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A. J.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP03785-A-B) |

APPEAL from an order of the Superior Court of Los Angeles County, Victor G. Viramontes, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother appeals from the juvenile court's assertion of jurisdiction over her 15-year-old son and 10-year-old daughter, as well as the court's order removing them from her custody.  She contends substantial evidence does not support the findings that she neglected son's mental health, or that this neglect placed her children at risk.  We disagree and affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

In May 2019, son told a school counselor he heard voices that told him to harm students.  Son was admitted to the hospital on an involuntary hold.  He reported struggling with "command hallucinations" several times a day, and said he had tried to strangle his sister in February 2019.  A year earlier, son had also attempted suicide.  He was diagnosed with bipolar disorder and psychosis, and prescribed psychiatric medications.  After a six-day stay, son was released.  Mother refused any medications for son upon discharge.

A social worker for the Department of Children and Family Services (Department) interviewed son who said he heard "voices" telling him to stab the "kids at school" who had bullied him.  The voices "were torturing his brain," and he "did not know what to do about it."  When asked why he was going to stab the bullies, son said that "they have to feel pain."  Daughter told the social worker that son had choked her, and only stopped when mother intervened.

In early June 2019, a social worker spoke with mother about obtaining mental health services for son. Mother said that son was "fine," and his feelings about hurting other students were an "appropriate" response because those students had bullied him. Mother refused to allow the social worker to meet with the children, and refused to allow son to participate in services through the Department.

Several employees at the hospital stated that mother did not follow through with obtaining mental health care for son. A psychologist reported that mother did not enroll son in services the week he was released, and that she had given son psychiatric medication that had been prescribed for her. A social worker stated that mother had not returned her calls about scheduling an appointment to connect son with mental health services. A case manager said the hospital was unable to link son with mental health services because mother refused to provide her with an address. Mother denied son had any mental health issues, and refused medication.

On June 14, 2019, the Department filed a petition alleging mother neglected son by failing to enroll him in recommended health care services and providing him with unprescribed medication. Mother's alleged neglect placed son and daughter at risk of serious physical harm under Welfare and Institutions Code section 300, subdivisions (b) and (j).[1] Due to mother's unwillingness to allow the Department access to the minors, the court issued protective custody warrants for the children.

---

[1] All further statutory references are to the Welfare and Institutions Code.

At the detention hearing, mother refused to disclose her children's location. The court held her in contempt. Two days later, the children were found in maternal grandmother's care, and taken into protective custody. The court detained son and daughter in separate foster homes, and ordered monitored visitation for mother.

Over the next several months, the children engaged in therapy at the homes of their foster parents. Mother told daughter not to talk to therapists because they were " 'the Devil,' " and instructed both children to "stay emotionless" in connection with this case. Mother told the social worker she would not consent to "any therapy" for children and refused to sign the consent forms for son to receive Regional Center services. She also made unannounced visits to the children at their schools.

At the jurisdiction hearing in January 2020, mother testified that she did not believe son had a mental illness but that he was just "tired" of being bullied. She acknowledged that son heard voices, but stated she was able to help him manage those voices using spirituality, breathing exercises, and sage. Mother did not believe in using psychiatric medication for mental illness. When asked if she would comply with court orders, she responded, "Yes, if they met me halfway, absolutely." When asked if she would comply with a doctor's recommendation that son take prescribed medications, mother said, "it depends" on whether she agreed with the recommendation and "if it didn't go against our religious practices."

The court sustained the petition's allegations of medical neglect, and removed the children from mother's custody. The

court ordered reunification services and monitored visitation for mother. Mother timely appealed.

### *DISCUSSION*

**1.** **_Motion to Dismiss_**

The Department argues that mother's appeal is barred by the disentitlement doctrine because she repeatedly violated juvenile court orders.

"Under the disentitlement doctrine, a reviewing court has the inherent discretionary power to dismiss an appeal when the appellant has refused to comply with trial court orders. The doctrine thus 'prevents a party from seeking assistance from the court while that party is in an attitude of contempt to legal orders and processes of the court' and ' "may be applied when the balance of the equitable concerns make it a proper sanction." ' [Citation.] . . . 'In dependency cases the doctrine has been applied *only in cases of the most egregious conduct by the appellant that frustrates the purpose of dependency law and makes it impossible for the court to protect the child or act in the child's best interests*' [citation]." (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1399.)

Here, the Department points to mother's repeated refusal to follow court orders, her initial refusal to disclose her children's whereabouts for two days, her discussion of the case with the children despite the court's admonition not to do so, and evidence she visited the children at school in violation of the monitored visitation order. Although it is a close call, we exercise our discretion not to invoke the disentitlement doctrine and, instead, address the merits of the appeal. (*In re A.G.*, *supra*, 204 Cal.App.4th at p. 1399; cf. *In re E.M.* (2012) 204 Cal.App.4th 467 [applying the disentitlement doctrine to the mother's appeal

5

when despite knowing that the stepfather had sexually abused her daughter, mother absconded with all of her children and their stepfather to Mexico for over two years during a pending dependency proceeding].)

## 2. *Substantial Evidence Supports the Jurisdiction Findings*

Mother contends insufficient evidence supports the juvenile court's finding that son and daughter are persons described by section 300, subdivision (b)(1). Under that subdivision, a child falls within the court's jurisdiction when the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . . " (§ 300, subd. (b)(1).) " 'In reviewing the jurisdictional findings . . . , we look to see if substantial evidence, contradicted or uncontradicted, supports them.' " (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Mother argues there is no substantial evidence of medical neglect because she "recognized" son "required mental health treatment," and, due to her efforts, son had seen a therapist on several occasions. She further points to her testimony that she would seek mental health treatment for son and would be amenable to him taking medication.

Mother selectively cites from the record to support her argument. The record shows that mother repeatedly denied that son had a mental illness, and justified his violent feelings toward other students as "appropriate." Although son initially spoke with a therapist a few times, mother resisted subsequent attempts to provide son with mental health treatment. She rebuffed efforts by the hospital to coordinate mental health care

6

services for him when he was released, and told the Department social worker she would not consent to therapy.  She also refused to accept medication prescribed to son at the hospital, and was equivocal at the jurisdiction hearing on whether she would comply with a doctor's recommendation that son take medication. Finally, she did not follow up with obtaining son mental health treatment when he was discharged from the hospital into her care.

Mother's failure to obtain necessary mental health treatment for son constituted substantial evidence she did not adequately protect her children.  Combined with son's violent behavior toward himself and his sister and his thoughts about stabbing schoolmates, there was substantial evidence of a substantial risk of serious physical harm to both son and daughter.  Because the court's finding under section 300, subdivision (b)(1) was sufficient to sustain jurisdiction over both children, we need not consider whether the other grounds for jurisdiction were supported by the evidence.  (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence"].)

3.    *Substantial Evidence Supports the Removal Order*

Mother contends the juvenile court also erred in removing son and daughter from her custody because there was no threat to their safety and reasonable means were available to protect the children short of removal.

7

A juvenile court may remove a dependent child from a parent's custody when it finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) " 'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citations.]' " (*In re Noe F.* (2013) 213 Cal.App.4th 358, 367.) We review the removal order for substantial evidence in light of the clear and convincing evidence standard. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

Mother first argues there was no danger to the children's safety in her custody: she acknowledged son needed help, took "steps to address his needs by searching out therapeutic services for him," and testified that she would ensure he received mental health treatment. However, as we have already detailed, there is substantial evidence mother did not take adequate steps to obtain mental health care for son, and was equivocal as to whether she would ensure he received this treatment in the future. Considered with son's violent behavior toward himself and his sister, substantial evidence supported the court's finding there was a substantial danger to the children's health, safety and well-being if they were left in mother's care.

8

Mother also argues reasonable alternatives to removal existed:  the juvenile court could have mandated compliance with a mental health treatment plan for son, "forced" mother to allow the Department access to the children, and ordered the Department to "seek updates from the children and the service providers more frequently than in a typical case to ensure that [son and daughter] were receiving appropriate care."  However, all of these plans required mother to cooperate with the Department and comply with court orders which the record showed she had been unwilling to do.  The evidence supported the court's determination that removal was warranted.[2]

### DISPOSITION

The Department's motion to dismiss is denied.  The jurisdiction findings and disposition order are affirmed.


                                         RUBIN, P. J.

WE CONCUR:



MOOR, J.



KIM, J.

---

[2]     The Department's request to dismiss its cross-appeal is granted.

9