Filed 5/10/22  In re Heaven S. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| In re HEAVEN S., a Person Coming Under the Juvenile Court Law. | B311843 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JONATHAN S.,<br><br>      Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP04648A) |

APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Conditionally affirmed with directions.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

————————————————————

## INTRODUCTION

Jonathan S., father of two-year-old Heaven S., appeals from the juvenile court's order terminating his parental rights under Welfare and Institutions Code section 366.26.[1]  He argues that the Los Angeles County Department of Children and Family Services did not comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law and that the juvenile court erred in ruling ICWA did not apply.  We agree and conditionally affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

When Heaven was born in July 2019, her mother, Isabel R., tested positive for marijuana.  After the Department learned Heaven's parents had a history of domestic violence and substance abuse, the juvenile court detained Heaven from her parents and placed her with a paternal aunt.  At that time, Jonathan and Isabel completed Judicial Council ICWA-020 forms, both checking the box stating that, as far as they knew, they had no Indian ancestry.  A Department social worker reported that Jonathan and Isabel stated they did not have

_____

[1]     Undesignated statutory references are to this code.

2

Indian ancestry. The juvenile court found it had no reason to know or believe Heaven was an Indian child and found ICWA did not apply.

The juvenile court later sustained counts under section 300, subdivisions (a), (b), and (j), alleging Jonathan's and Isabel's domestic violence, substance abuse, and inability to care for Heaven put Heaven at substantial risk of suffering serious physical harm. At disposition, the court declared Heaven a dependent child of the court, removed her from both parents, granted Jonathan but not Isabel reunification services, ordered Jonathan to comply with his case plan, and granted both parents monitored (but separate) visitation. Nothing in the record indicates the Department or the juvenile court mentioned ICWA at either the jurisdiction or the disposition hearing.

At a review hearing, the juvenile court found Jonathan had not made substantial progress in his case plan or in alleviating or mitigating the causes that necessitated placement. The court set the matter for a selection and implementation hearing under section 366.26. The court subsequently terminated Jonathan's and Isabel's parental rights, rejecting both parents' argument the beneficial parent-child exception to termination applied. Again, nothing in the record indicates the Department or the juvenile court mentioned ICWA at either the review hearing or the hearing under section 366.26. Jonathan timely appealed from the order terminating his parental rights.

## DISCUSSION

Jonathan argues that the Department breached its duty of inquiry under ICWA and California law by "failing to interview extended family members about Jonathan's and [Isabel's] possible Indian heritage" and that his and Isabel's "denial of any Indian ancestry to their knowledge on their ICWA-020 forms did not relieve the [D]epartment of its duty of inquiry and duty to document that inquiry." Jonathan also argues "the juvenile court failed to ensure the [D]epartment adequately investigated the minor's possible Indian ancestry through extended family members." He asks us to direct the Department "to conduct a sufficient inquiry and investigation." Because Jonathan is correct across the board, we conditionally affirm the juvenile court's order terminating his parental rights and direct the court to comply, and to ensure the Department complies, with ICWA and related California law.

### A. *Applicable Law*

ICWA and California law imposes certain obligations on child protective agencies and juvenile courts. As we have frequently observed (including in several published opinions),[2] the Department often argues those obligations are unnecessary or unproductive, and some justices have found they are

---

[2] *In re J.C.* (2022) 77 Cal.App.5th 70; *In re Antonio R.* (2022) 76 Cal.App.5th 421; *In re Y.W.* (2021) 70 Cal.App.5th 542.

4

burdensome and inefficient.[3]  Yet Congress and the Legislature have made clear what those obligations are, why they are, and what child protective agencies and juvenile courts must do.

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7; see *In re J.C.* (2022) 77 Cal.App.5th 70, 76; *In re T.G.* (2020) 58 Cal.App.5th 275, 287; *In re E.H.* (2018) 26 Cal.App.5th 1058, 1067.)  "In enacting ICWA, Congress expressly found 'there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children'; 'that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions'; and 'the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.'" (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 435-436.) "ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes

_____

[3]    *In re A.C.* (2022) 75 Cal.App.5th 1009, 1023-1024 (conc. & dis. opn. of Crandall, J.); *In re H.V.* (2022) 75 Cal.App.5th 433, 440 (dis. opn. of Baker, J.).

and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family." (*In re T.G.*, at p. 287; see 25 U.S.C. § 1902; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740 ["'Congress enacted ICWA to further the federal policy '"that, where possible, an Indian child should remain in the Indian community."'"'"].)

ICWA provides: "'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' [Citation.]  This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.*, *supra*, 1 Cal.5th at p. 5; see 25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re H.V.* (2022) 75 Cal.App.5th 433, 437; *In re T.G.*, *supra*, 58 Cal.App.5th at pp. 287-288.)[4]  "The notice requirement is at the heart of ICWA because it 'enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding.'" (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 527; see 25 U.S.C.

---

[4]  "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subds. (a) & (b); *In re H.V.*, *supra*, 75 Cal.App.5th at p. 437.)

6

§ 1912(a); § 224.3, subd. (d); *In re Isaiah W.*, at p. 5; *In re T.G.*, at p. 288.)

"'"Federal regulations implementing ICWA . . . require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'"'" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551; see 25 C.F.R. § 23.107(a) (2022); *In re J.C.*, *supra*, 77 Cal.App.5th at p. 77.) "State law, however, more broadly imposes on social services agencies and juvenile courts (but not parents) an 'affirmative and continuing duty to inquire' whether a child in the dependency proceeding 'is or may be an Indian child.'" (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 741-742; see § 224.2, subd. (a); *In re Y.W.*, at p. 551.)

Section 224.2 "'"creates three distinct duties regarding ICWA in dependency proceedings."'" (*In re H.V.*, *supra*, 75 Cal.App.5th at p. 437; see *In re J.C.*, *supra*, 77 Cal.App.5th at p. 77; *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 429]; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) First, section 224.2, subdivision (b), requires the child protective agency to ask "'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'" (See *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; Cal. Rules of Court, rule 5.481(a)(1).) This duty of inquiry also applies to the juvenile court, which must "ask each participant present in the hearing whether the participant knows

or has reason to know that the child is an Indian child." (§ 224.2, subd. (c); see 25 C.F.R. § 23.107(a) (2022) ["[s]tate courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child"]; *In re Benjamin M., supra,* 70 Cal.App.5th at p. 742 [section 224.2, subdivision (c), "requires the juvenile court to ask participants who appear before the court about the child's potential Indian status"].)

Second, if the court or child protective agency "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child," the court and the Department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."[5] (§ 224.2, subd. (e); see *In re H.V., supra,* 75 Cal.App.5th at p. 437; *In re T.G., supra,* 58 Cal.App.5th at p. 290; Cal. Rules of Court, rule 5.481(a)(4).) Third, if the further inquiry ""results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."" (*In re H.V.,* at p. 437; see 25 U.S.C. § 1912(a); § 224.3, subd. (a) [notice under ICWA "shall be provided" if the court, social worker, or probation officer "has reason to know . . . that an Indian child is involved"].) "The duty to develop information concerning whether a child is an Indian child rests with the court

---

[5] "'Reason to believe' is broadly defined as 'information *suggesting* that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.'" (*In re Benjamin M., supra,* 70 Cal.App.5th at p. 744; see § 224.2, subd. (e)(1); *In re T.G., supra,* 58 Cal.App.5th at p. 290, fn. 14.)

8

and the Department, not the parents or members of the parents' families." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 430.)

"'"The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings."' [Citation.] 'If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence.'" (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 552; see § 224.2, subd. (i)(2); *In re Josiah T.* (2021) 71 Cal.App.5th 388, 408 ["the court may not find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child protective agency] inquiry that is not proper, adequate, or demonstrative of due diligence"]; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1050; Cal. Rules of Court, rule 5.481(b)(3).)

> B.   *The Department Failed To Conduct an Adequate Inquiry into Heaven's Possible Indian Ancestry*

The Department did not fulfill its duty to conduct an adequate inquiry into whether Heaven may be an Indian child because it did not ask any of Heaven's grandparents or other extended family members, many of whom were readily available and were interviewed by Department social workers, whether Heaven had any possible Indian ancestry. (See 25 U.S.C. § 1903(2) ["'extended family member'" includes the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent"]; § 224.1, subd. (c) ["'extended family member'" is

9

"defined as provided in Section 1903 of the federal Indian Child Welfare Act"].) The many, many persons Department social workers spoke with multiple times but did *not* ask about possible Indian ancestry include Heaven's maternal grandmother, maternal grandfather, paternal grandmother, a maternal aunt, and a paternal aunt (with whom Heaven was placed). The Department's failure to ask any of these relatives about Heaven's possible Indian ancestry violated section 224.2, subdivision (b). (See *In re J.C.*, *supra*, 77 Cal.App.5th at p 80 [child protective agency's failure to inquire of a child's paternal grandmother, maternal step-grandfather, and maternal grandparents about the child's possible Indian ancestry violated the agency's duty of inquiry under section 224.2, subdivision (b)]; *In re Antonio R.*, *supra*, 76 Cal.App.5th at pp. 430-431 [same for child protective agency's failure to inquire of a child's maternal grandmother, maternal grandfather, maternal aunts, and a maternal uncle]; *In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 [child protective agency's "first-step inquiry duty under ICWA and state law was broader [than interviewing only the mother], requiring it also to interview, among others, extended family members and others who had an interest in the child"]; *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742 [failure to ask the father's known relatives about possible Indian ancestry violated ICWA requirements under state law]; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 [section 224.2 "obligates the court and child protective agencies to ask all relevant involved individuals . . . 'whether the child is, or may be, an Indian child'"]; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290 [the duty to inquire "begins with initial contact [citation] and obligates the juvenile court and child

protective agencies to ask all relevant involved individuals whether the child may be an Indian child"].)

The juvenile court also did not satisfy its duty to ensure the Department adequately investigated whether Heaven may be an Indian child. There is no indication in the record that, after the detention hearing, the juvenile court gave ICWA another thought. The court did not ask the Department if the social workers made the relevant inquiries when they spoke to the various family members the social workers had interviewed and, in some cases, met with in person. Nor did the court ask the Department to describe the efforts it made to ascertain whether Heaven had any Indian ancestry; the record reflects that, other than obtaining signed ICWA-020 forms (and asking the parents in their initial interview if they had any Indian ancestry), the Department made no such efforts at all. (See *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 431 ["a juvenile court errs in making a finding ICWA does not apply to the proceedings without first ensuring that the Department has made an adequate inquiry under ICWA and California law"]; *In re Y.W.*, *supra*, 70 Cal.5th at p. 555 [the juvenile court has a duty to ensure child protective agencies comply with section 224.2, subdivision (b)]; *In re N.G.* (2018) 27 Cal.App.5th 474, 482 [the juvenile court has a duty to ensure the child protective agency made the relevant inquiries, including asking a maternal uncle whether the child "may have maternal Indian ancestry"]; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 709 ["the court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so"].)

11

The Department concedes it "did not ask extended family members about Heaven's possible Indian status." The Department argues, however, it "substantially compl[ied] with its initial inquiry duties [by] asking the parents about Heaven's possible Indian status when investigating the child welfare referral, at which time both parents denied having Indian ancestry." The Department, however, cites no authority in support of its substantial compliance argument. The Department's decision to limit its ICWA inquiry to reading the checked boxes on the two Judicial Council ICWA-020 forms and asking each parent one question did not comply, substantially or otherwise, with its duty of inquiry under section 224.2. (See *In re J.C.*, *supra*, 77 Cal.App.5th at p. 81 ["the extensive inquiry requirements under section 224.2 presume that a parent's declaration on the ICWA-020 form, reliable or not, is not enough and that the child protective agency must do more than look at the form"]; *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 554 ["[n]othing in section 224.2, subdivision (b), relieves the Department of its broad duty to seek that information from 'all relevant' individuals [citation] simply because a parent states on the ICWA-020 form . . . 'I have no Indian ancestry as far as I know'"; creating "[s]uch a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe"].)

The Department also argues "any initial inquiry error [was] harmless because both parents denied Indian ancestry, neither parent objected to the court's ICWA-related findings, and [Jonathan] failed to make any affirmative representation on appeal that Heaven might be an Indian child." We have previously (and repeatedly) rejected the Department's incorrect view of harmless error under ICWA. Where the Department fails

12

to discharge its duty of inquiry under ICWA and related California law, "and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances . . . prejudicial and reversible. Speculation as to whether extended family members might have information likely to bear meaningfully on whether the child is an Indian child has no place in the analysis of prejudicial error where there is an inadequate initial inquiry. Rather, in determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child. In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child—regardless of whether the information ultimately shows the child is or is not an Indian child." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 436; see *In re Christopher L.* (2022) ___ Cal.5th ___, ___ [2022 Cal. Lexis 2313, p. 30] [2022 WL 1210274, p. 9] ["appellate courts should be wary of finding harmless error '[w]hen a counterfactual inquiry appears too difficult to responsibly undertake, or a counterfactual conclusion relies on inferences that really amount to guesswork,'" quoting *In re. J.P.* (2017) 15 Cal.App.5th 789, 804 (conc. opn. of Baker, J.)].)

Nor, contrary to the Department's assertion, does Jonathan have to make an affirmative representation on appeal Heaven may be an Indian child. As we explained in *In re Y.W.*, *supra*, 70 Cal.App.5th 542, a parent "does not need to assert he or she has Indian ancestry to show a child protective agency's failure to make an appropriate inquiry under ICWA and related state law

is prejudicial." (*Id*. at p. 556.)  This is because it is "'unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim.'" (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 433; see *In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 & fn. 4; *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743.)

The Department argues our decision in *In re Y.W.* is "legally untenable" because it would require remand "in all cases where the child protective agency did not inquire with every individual included in section 224.2, subdivision (b), about the subject child's possible Indian status."  And yet the Legislature has directed child protective agencies to inquire with the extended family members identified in section 224.2, subdivision (b), and 25 U.S.C. § 1903(2).  The Legislature makes the law, and we all must follow it, even government agencies. (See *In re A.G.* (2012) 204 Cal.App.4th 1390, 1396 [child protective agency's "unexplained failure to follow the law" required remand with directions for the agency "to fulfill its ICWA-related duties, as it should have done long ago"].)  More relevant to this case, while there may be circumstances where a child protective agency's failure to ask *all* the extended family members (for example, asking three of four grandparents or two of three uncles or aunts) may be harmless, that does not make harmless the Department's failure here to ask *any* extended family members.[6]

_____

[6]    The Department also asserts *In re Y.W.* is distinguishable because here, unlike in *In re Y.W.*, both parents were asked if

14

Finally, the Department complains that under *In re Y.W.* "all future appeals involving adverse custody orders are likely to include an argument that remand is required because one or more of these individuals were not asked about the child's possible Indian status, regardless of how frivolous the argument may be or how detrimental a remand order would be to the child, particularly one who has been in the dependency system for years and is in need of permanency and stability in his or her life." The Department's complaint has some initial appeal. But the solution is not to violate the law, but to comply with it, by conducting the inquiry required by law while the matter is pending in the juvenile court, rather than failing to conduct an adequate inquiry and hope an appellate court will find the failure harmless. Any delay caused by the child protective agency's failure to comply with its duty of inquiry under 224.2 is the responsibility of the agency. And, of course, if the child is an Indian child, returning the child to the tribe is the permanency and stability the child needs and the tribe deserves.

## DISPOSITION

The order terminating Jonathan's parental rights is conditionally affirmed. The matter is remanded to the juvenile court with directions to ensure the Department fully complies with the inquiry and, if necessary, notice provisions of ICWA and related California law, including interviewing Heaven's

---

they had Indian ancestry and responded they did not. As discussed, a child protective agency's duty to inquire is not limited to asking the parents (here, once) if they have Indian ancestry.

grandparents, maternal aunt, paternal aunt, and other extended family members they may identify.



SEGAL, J.

We concur:


PERLUSS, P. J.


FEUER, J.