Filed 4/18/23  In re J.L. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re J.L., a Person Coming Under the Juvenile Court Law. | B320607<br>(Los Angeles County<br> Super. Ct. No. DK21897A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>V.O.,<br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Judge.  Affirmed.

Carolyn S. Hurley, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

V.O. (mother) appeals from the juvenile court's order terminating parental rights (Welf. & Inst. Code, § 366.26)[1] to her daughter, J.L. (born Sept. 2015). Mother's sole argument is that the Los Angeles Department of Children and Family Services (DCFS) did not comply with its "further inquiry" duties under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.).

During the dependency proceedings, the juvenile court found J.L. to be an Indian child, as the Navajo Nation deemed her eligible for membership given that mother was on the Navajo Nation census rolls. Mother does not challenge DCFS's compliance with ICWA as it relates to J.L.'s Navajo ancestry through the maternal side of her family, however. Rather, mother's appeal is based solely on the alleged lack of compliance with ICWA "further inquiry" requirements with respect to father R.L's possible Hopi ancestry.[2]

As discussed below, we affirm.

## FACTUAL AND PROCEDURAL HISTORY[3]

On March 2, 2017, DCFS filed a dependency petition on behalf of J.L. based on father's criminal history and medical neglect by mother, after J.L. suffered second- and third-degree burns covering 30 percent of her body. Accompanying the petition was the Indian child inquiry attachment form

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]     Father is not a party to this appeal.

[3]     Our summary of the facts is limited to those needed for resolution of the issues raised on appeal and to provide relevant context.

(ICWA-010), demonstrating mother had been interviewed about J.L.'s Indian status on February 28, 2017, and stated possible Navajo membership or eligibility for membership in the Navajo tribe. J.L. was detained and placed with maternal aunt.

At the detention hearing, mother and maternal grandmother were present. The juvenile court noted that father was currently incarcerated in a state facility and ordered DCFS to give him notice of any future hearing. Mother had signed a parental notification of Indian status form (ICWA-020), indicating that she was or may be a member of, or eligible for membership in, the Navajo tribe. The court ordered DCFS to investigate mother's Navajo heritage claim and provide notice to the tribe.

On March 29, 2017, DCFS inquired with father and other paternal relatives about J.L.'s Indian status. First, DCFS spoke with father. Father said he had Hopi ancestry through paternal grandfather's side of the family. Father said paternal grandfather (Richard Sr., from whom father was estranged) did not have his own telephone. Father provided the name and telephone number of his mother (paternal grandmother) as a way to reach paternal uncle (Isaac), who lived with paternal grandfather. Next, DCFS spoke with the paternal grandmother, who provided a telephone number for Isaac. Paternal grandmother denied having Indian ancestry on her side of the family and said she was no longer in a relationship with paternal grandfather. Finally, DCFS called and spoke with paternal uncle, who said paternal grandfather was away at work and would return home in the afternoon. Paternal uncle agreed to inform paternal grandfather that DCFS needed "to know all information regarding ICWA." Despite the social working leaving a message with paternal uncle requesting paternal

3

grandfather call her back, DCFS did not receive any response from paternal grandfather.

On April 11, 2017, DCFS sent notices for the adjudication hearing (ICWA-030 forms) to the Bureau of Indian Affairs (BIA), the Navajo Nation, and the Hopi tribe. The ICWA-030 forms included: J.L.'s full name, birthdate, and place of birth; mother's full name, current address, birthdate, birth city and state, and Navajo Nation Census Roll Number; father's full name, birthdate, birth state and claim that he had Hopi ancestry; paternal grandmother's full name and birthdate; paternal grandfather's full name, current address, birthdate, birth state, and claim (made by father) that he had Hopi ancestry; and the full names of paternal great-grandparents (who were deceased).

On April 19, 2017, a Navajo Nation intake worker informed DCFS that she had received the ICWA-030 form and that J.L. was eligible for membership in the tribe. The Navajo Nation followed up with a letter to DCFS confirming this information and enclosing a copy of a document entitled "Certification of Navajo Indian Blood," which provided mother "is listed on the Navajo Indian Census Roll" and included mother's census roll number.

On April 19, 2017, DCFS filed an amended petition, adding an allegation based on mother's marijuana use.

On April 24, 2017, the Hopi's ICWA coordinator informed DCFS that she had received the ICWA-030 form and would "process the inquiry as soon as possible." The Hopi tribe subsequently sent DCFS a letter and memorandum entitled "Verification of Tribal Enrollment." The letter stated J.L. was not eligible for enrollment with the Hopi and that the tribe would therefore not intervene in the dependency proceeding. The letter also

4

reported J.L., mother, and father were not enrolled with the Hopi tribe or eligible for tribal enrollment.

On May 17, 2017, father signed a parental notification of Indian status form (ICWA-020), indicating he may have Hopi ancestry.

At the July 12, 2017 adjudication hearing, the court found father to be J.L.'s biological parent. The court also found there was reason to believe J.L. is an Indian child within the meaning of ICWA. After mother pled no contest to the medical neglect allegation, the court sustained the allegation and dismissed the remaining allegations in the amended petition. The court transferred the case to another department to ensure ICWA compliance and continued the disposition hearing.

On August 17, 2017, DCFS filed a subsequent petition based on father's history of substance abuse and domestic violence. J.L. had since been removed from maternal aunt's care and placed in the foster home of Yvette A. On February 28, 2018, DCFS amended the subsequent petition to add the allegation that the parents continued to engage in domestic violence.

At the disposition hearing on March 8, 2018, the court found father to be the presumed father. The court sustained the domestic violence allegation in the subsequent petition and dismissed the remaining allegations. The court removed J.L. from her parents. A Navajo qualified expert witness was present at the hearing, as the tribe had intervened in the proceeding based on J.L. being eligible for membership in the tribe. The expert testified that the tribe was in agreement that J.L. should be removed from her parents and that DCFS had provided active efforts to prevent the breakup of the Indian family. The court found that J.L. is an Indian child and that active efforts had been made to provide culturally appropriate services and rehabilitative programs designed to prevent the breakup of the Indian family, as required

5

by ICWA. Because those efforts had been unsuccessful, the court determined it would deviate from the preferred placement with an Indian family and place the child with Yvette A. The court stated that the Navajo Nation was not opposed to this placement.[4]

On August 22, 2019, the court terminated reunification services and set a permanency planning hearing. The court noted that the Navajo Nation was given notice of the hearing and chose not to participate.

After multiple continuances, the court held the permanency planning hearing on May 12, 2022. Both mother and father were present. The court indicated a qualifying expert from the Navajo nation agreed DCFS had made active efforts to prevent the breakup of the Indian family. The court found that there was sufficient evidence to deviate from the placement preferences under ICWA, and that J.L. was properly placed with Yvette A., who was also planning to adopt J.L.'s younger sibling. The court then terminated mother's and father's parental rights and designated Yvette A. as the prospective adoptive parent of J.L.

Mother timely filed a notice of appeal.

---

[4]      "In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families." (25 U.S.C. § 1915(a).) J.L.'s caregiver Yvette A. was neither an extended family member nor part of any Indian tribe or family. Mother does not challenge the court's placement decision under ICWA.

**DISCUSSION**

A. *Applicable Law*

ICWA[5] reflects "a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881 (*Austin J.*).) Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subds. (a) and (b) [incorporating federal definitions].)

The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.) This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. The phase at issue here is the duty of further inquiry.

The duty to inquire whether a child is an Indian child begins with "the initial contact," i.e., when the referring party reports child abuse or neglect that jumpstarts DCFS's investigation. (§ 224.2, subd. (a).) DCFS's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the

---

[5]     Our state Legislature incorporated ICWA's requirements into California statutory law in 2006. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

7

child is, or may be, an Indian child. (*Id.*, subd. (b).) Similarly, the juvenile court must inquire at each parent's first appearance whether he or she "knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c).) The juvenile court must also require each parent to complete the parental notification of Indian status form (ICWA-020). (Cal. Rules of Court, rule 5.481(a)(2)(C).) The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a); § 224.2, subd. (c).)

A duty of further inquiry is imposed when DCFS or the juvenile court has "reason to believe that an Indian child is involved" in the proceedings. (§ 224.2, subd. (e); see *Austin J., supra,* 47 Cal.App.5th at pp. 883–884; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048–1049 (*D.S.*).) "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1); see *In re I.F.* (2022) 77 Cal.App.5th 152, 162.)

Further inquiry as to the possible Indian status of the child includes: (1) interviewing the parents and extended family members to gather required information;[6] (2) contacting the BIA and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership; and (3) contacting the tribes and any other person

---

[6] This required information includes: all known names of the Indian child, biological parents, grandparents, and great-grandparents, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information. (§ 224.3, subd. (a)(5).)

who may reasonably be expected to have information regarding the child's membership or eligibility. (§§ 224.2, subds. (e)(1)–(2) & 224.3, subds. (a)(5)(A)–(C); Cal. Rules of Court, rule 5.481(a)(4) [setting forth same requirements].) Contact with a tribe must include, at a minimum, "telephone, facsimile, or electronic mail contact to each tribe's designated agent" and include information "necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(C); see *D.S., supra,* 46 Cal.App.5th at p. 1049.) The sharing of information with tribes at the further inquiry stage is distinct from formal ICWA notice, which requires a "'reason to know'" that the child "'*is* an Indian child'" rather than a "reason to believe" that the child is an Indian child. (*Austin J., supra,* 47 Cal.App.5th at p. 885 (citing 81 Fed.Reg. 38804); see *D.S.,* at p. 1052.)[7]

We review a juvenile court's ICWA findings for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re S.R.* (2021) 64 Cal.App.5th 303, 312.)

B. *Further Inquiry into Father's Possible Indian Ancestry*

Mother contends that DCFS failed to discharge its duty of further inquiry because it made only one attempt to contact paternal grandfather. We disagree.

After claiming paternal grandfather had Hopi ancestry, father informed the social worker that paternal grandfather was living with

---

[7] Because mother is appealing from the findings made at the May 12, 2022 hearing, the current ICWA statutes apply, including key amendments pertaining to inquiry and notice requirements that became effective January 1, 2019. (*In re A.M.* (2020) 47 Cal.App.5th 303, 321; *D.S., supra,* 46 Cal.App.5th at p. 1048.)

9

paternal uncle. However, paternal grandfather did not have his own telephone number. Father directed the social worker to contact paternal grandmother, who in turn provided paternal uncle's telephone number. When the social worker contacted paternal uncle, he stated paternal grandfather was not home but would return in the afternoon. He further stated that he would inform paternal grandfather that DCFS needed "to know all information regarding ICWA." DCFS did not receive any response from paternal grandfather.

In contending DCFS's efforts to contact the paternal relatives were insufficient, mother exclusively relies on cases in which DCFS did not make *any* attempt to contact known extended family members. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 707 ["there is no information in the record that DPSS wrote to the paternal grandfather at his last known address to seek [ICWA] information or that it made any other effort to contact him"]; *In re K.T.* (2022) 76 Cal.App.5th 732, 743 [DCFS "made no investigation" of any extended family members]); *In re M.E.* (2022) 79 Cal.App.5th 73, 81 ["[t]he record is devoid of any evidence that the Department followed up on the information provided by mother" regarding Indian ancestry]; *In re T.G.* (2020) 58 Cal.App.5th 275, 292 [DCFS did not attempt to interview known maternal relatives about information on Indian ancestry]; *In re N.G.* (2018) 27 Cal.App.5th 474, 481–482 [DCFS failed to attempt ICWA interview of paternal cousins who were registered tribe members despite DCFS having contact information for them]; *In re A.G.* (2012) 204 Cal.App.4th 1390, 1397 [no effort made to interview any of father's immediate or extended family members about their Indian heritage despite their involvement in the dependency proceedings].) That is not the case here. As noted, DCFS contacted paternal grandmother and paternal uncle and attempted contact

with paternal grandfather, who did not have a telephone. Moreover, DCFS had already gathered both father's and paternal grandfather's full names, current addresses, birthdates, and birthplaces, as well as the full names of the deceased paternal great-grandparents to provide to the Hopi tribe. Given these circumstances, we reject mother's unsupported contention that DCFS was required to make repeated attempts to contact paternal grandfather after he failed to call back.

Mother contends the correspondence sent to the Hopi was deficient because it omitted paternal grandfather's tribal number (assuming he had one) and additional information about the paternal great-grandparents (now deceased) as required for formal ICWA notice. However, having a "reason to believe" a child may be an Indian child does not trigger the notice requirements of ICWA. (*In re K.T., supra*, 76 Cal.App.5th at p. 743.) Rather, "ICWA notice is required only if after initial and further inquiries there is 'reason to *know*' that an Indian child is involved in the proceeding." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1084; see § 224.2, subd. (f).) There is "reason to know" a child is an Indian child if any one of six statutory criteria is met—e.g., if the court is advised that the child is a member or eligible for membership in an Indian tribe, the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (*Id.*, subd. (d).) Because none of these statutory criteria was met here as to the Hopi tribe, formal ICWA notice was not required, and any deficiencies in the correspondence sent to the Hopi were "legally irrelevant." (*In re. Q.M.,* at p. 1084; see *In re D.F.* (2020) 55 Cal.App.5th 558, 572 ["[B]ecause DCFS was not required to provide formal

11

notice to the pertinent tribes, we do not reach Mother's argument that the ICWA notices may have lacked necessary information"].)

At the "reason to believe" stage, correspondence with a tribe need only include information "necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(C).) In the ICWA-030 form mailed to the tribe, DCFS provided all available information received from father, paternal grandmother, and paternal uncle. Mother does not dispute that the information provided to the Hopi tribe was correct. After receiving the correspondence, the Hopi tribe informed DCFS that neither J.L. nor father was enrolled with the tribe or eligible for tribal enrollment. The tribe did not indicate that it lacked sufficient information to make a determination. We conclude the correspondence with the tribe was not legally insufficient.

Substantial evidence exists that DCFS met its duty of further inquiry as to Indian ancestry on father's side.[8]

//

//

//

//

//

---

[8] Because we find DCFS met its duty of further inquiry, we need not reach DCFS's alternative argument that any error was harmless given that the juvenile court would still have concluded that the Navajo Nation, not the Hopi, was J.L.'s tribe, as J.L. was eligible for membership in the Navajo Nation and mother was on the Navajo census role. (See 25 U.S.C. § 1903(5) [where a child is a member or eligible for membership in more than one tribe, the "Indian child's tribe" for purposes of a dependency proceeding is the one with which the child has "the more significant contacts"].)

12

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                    STONE, J.*

We concur:


CURREY, Acting P. J.


COLLINS, J.

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.