Filed 3/10/26  In re E.M. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.M., <br><br> Defendant and Appellant. | F090593 <br><br> (Super. Ct. No. 25JP-00002-A) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Ann Hanson, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]    Before Levy, Acting P. J., Peña, J. and Meehan, J.

-ooOoo-

Appellant, J.M. (mother), is the mother of now 14-year-old E.M. Mother appeals from orders of the juvenile court finding that the Merced County Human Services Agency (agency) complied with the Indian Child Welfare Act (ICWA) and related California law and that ICWA did not apply to E.M. As her sole contention on appeal is that the court and the agency failed to comply with ICWA, she requests the matter be remanded with instructions for the court to ensure full compliance with ICWA inquiry and notice provisions. The agency concedes a limited remand for the purpose of compliance with ICWA is appropriate, and we agree. We conditionally reverse the court's orders and remand the matter for the limited purpose of compliance with ICWA. Further, because the parties have submitted a stipulation indicating there are no other appellate issues other than the ICWA compliance issue discussed herein and seek immediate remittitur, remittitur shall issue immediately.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 4, 2024, mother, while under the influence of alcohol, got into an argument with then 13-year-old E.M., threatened her with a knife and a taser, and threatened to kill her, stating, " 'I want you dead.' " E.M. fled to their neighbor's apartment in fear for her life but mother followed her and got into a verbal and physical altercation with the neighbors. Mother was arrested.

On January 5, 2025, a social worker interviewed the police officer who responded to the incident. The officer stated that after the incident E.M. eventually left with confidential adult 1 (CA 1).[1]

E.M. reported to the social worker that during a prior incident, she and mother were in the car when mother became angry and started punching her with a closed fist. E.M. stated that when these types of incidents occurred, she would call her maternal

---

[1] CA 1 is E.M.'s adult half sister.

2.

grandmother to pick her up because she was afraid of mother, and had stayed with her maternal grandmother for an extended period of time after a prior incident in 2024. She also reported incidents in which mother made statements to the effect that she wanted to commit suicide and kill E.M. She stated mother would also drive under the influence of alcohol and would swerve the car while saying she wanted to kill herself.

A social worker contacted CA 1. CA 1 stated she received a text message from E.M. requesting to be picked up from mother's home because of mother's aggressive behavior. CA 1 stated she arrived at the neighbor's apartment where E.M. and mother were, and that mother was engaged in a verbal and physical altercation with the neighbors. CA 1 stated mother tossed her keys at her and began to chase her, stating she was scared due to mother being under the influence of alcohol. CA 1 stated mother had engaged in similar aggressive behavior towards her when she was a child and had waved a knife at her, so mother lost custody of her. She stated E.M. had contacted her before about mother's aggression, but this was the first incident that also involved a taser and knife. She stated that mother had also stabbed mattresses in the past and attempted suicide by consuming over-the-counter pain medication, 13 years before the current incident. CA 1 told a social worker that E.M.'s father had never been a part of E.M.'s life and that she only knew his first name.

A social worker interviewed mother, who reported she drank alcohol daily due to past trauma and that E.M. knew how to "push [her] buttons." Mother stated her habit was to buy three 24-ounce cans of beer and drink them all in one sitting every other day, as well as consume one 5-liter box of wine within three days. Mother told the social worker that E.M.'s alleged father, M.R. (father), was chronically homeless, in and out of jail, abused drugs, had never provided regular care or support for E.M., and that his

whereabouts were unknown.[2]  The report noted all efforts to locate him were unsuccessful.

E.M. was detained pursuant to Welfare and Institutions Code section 300[3] and released to the agency for out-of-home placement.  Mother, E.M. and CA 1 denied Indian ancestry.  Mother stated to a social worker that father also did not have Indian ancestry.

On January 7, 2025, the agency filed a juvenile dependency petition pursuant to section 300, subdivisions (a), (b)(1), and (c).

On January 8, 2025, the juvenile court held a detention hearing at which mother was present.  The agency had made an ICWA inquiry as to mother, E.M., the maternal grandmother, and CA 1.  The court questioned mother regarding ICWA, asking her if she or any member of her extended family were members of an Indian tribe or had received benefits because of such membership, whether she had attended an Indian boarding school, had been born on a reservation, had a certificate degree of Indian blood, was on any roll or census of Indian tribal membership, spoke an Indian language, participated in tribal political activities such as elections, or participated in tribal cultural activities such as powwows.  Mother answered in the negative to all of the court's inquiries.  After questioning mother, the court found ICWA did not apply to her.  Father was not present at the hearing, and the court reserved the issue of paternity.

On February 5, 2025, the juvenile court held a jurisdiction hearing.  The agency filed an ICWA-020 form the same day.  On the form, mother indicated that "none of the above apply" in response to all inquiries about Indian ancestry.  At the hearing, E.M.'s maternal grandmother also denied she or any member of her extended family were members of an Indian tribe or had received benefits of such membership.  She also

---

[2]     M.R. was adjudicated the father of E.M. in Merced County Family Court case No. 22FL-01963.

[3]     Further code references are to the Welfare and Institutions Code.

denied attending an Indian boarding school, having been born on an Indian reservation, having a certificate degree of Indian blood, being on any roll or census of Indian tribal membership, speaking an Indian language, participating in tribal political activities such as an election, or participating in tribal cultural activities such as a powwow. The court found, based on E.M.'s maternal grandmother's responses, that ICWA did not apply. The minute order from the hearing stated, "[t]he [c]ourt finds ICWA does not apply to the minor regarding the maternal grandmother."

On March 18, 2025, the juvenile court held a jurisdiction hearing. Mother denied the allegations of the petition, waived her right to a contested hearing, and submitted the matter to the court. The court sustained the petition as alleged, declared E.M. a dependent of the court, removed her from mother's custody, and placed her in foster care.

On September 13, 2025, the agency submitted a declaration of due diligence regarding its efforts to locate father as an attachment to its six-month review hearing report. The agency indicated its search efforts for father were ongoing.

On September 24, 2025, the juvenile court granted mother's request to set the matter for a review hearing.

On October 14, 2025, the juvenile court held a contested six-month review hearing. Mother waived her right to a contested hearing, objected to the agency's allegations, and submitted the matter to the court. The court found the agency provided mother with reasonable reunification services and that the progress by mother to mitigate or alleviate the causes necessitating E.M.'s removal from her home had been minimal. The court extended family reunification services for mother to 12 months. The court found the agency conducted a reasonably diligent search for father, whose whereabouts remained unknown.

On October 14, 2025, mother timely filed a notice of appeal.

5.

## DISCUSSION

Mother contends the agency failed to comply with ICWA's inquiry and notice provisions and requests that the matter be remanded with instructions for the juvenile court to ensure full compliance with ICWA. Here, the parties agree, as do we, that remand for compliance with ICWA inquiry requirements pursuant to section 224.2, subdivision (b) is required. The parties have filed a joint application and request for our court to order a stipulated conditional reversal and limited remand to the court with directions to order the agency to comply with the inquiry and documentation provisions set forth in section 224.2, subdivision (b), and California Rules of Court, rule 5.481(a)(5). The parties stipulate that in all other respects, the court's orders extending family reunification services are affirmed.

The agency's initial ICWA inquiry was made only of E.M., mother, E.M.'s maternal grandmother, and CA 1. The record does not show whether the agency made efforts to determine which other extended family members of whom the initial ICWA inquiry must be made were available for inquiry and what efforts the agency made to fulfill its duty to actually inquire of those people as to whether ICWA applied to E.M.

Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) California adopted the main provisions of ICWA into statutory law in 2006 and, more recently, amended its own statutes to conform with additional federal regulations concerning ICWA issued in 2016. (*In re Autumn K.* (2013) 221 Cal.App.4th 674, 703–704; *In re A.W.* (2019) 38 Cal.App.5th 655, 662; Assem. Bill No. 3176 (2017–2018 Reg. Sess.).)

In every dependency proceeding, the juvenile court and the agency have an affirmative and continuing duty to determine whether ICWA applies. (*In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165; Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

6.

In *In re H.V.*, the juvenile court explained,

"(1) Pursuant to ICWA, '[i]n any involuntary proceedings in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking … termination of parental rights to[] an Indian child shall notify the parent or Indian custodian and the Indian child's tribe' of the pending proceedings and its right to intervene.  [Citations.]  'As the Supreme Court recently explained, notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the matter.  [Citation.]' [Citation.]

"(2) 'ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  [Citations.]  The trial court and [agency] have an affirmative and continuing duty in every dependency proceeding to determine whether ICWA applies.  [Citations.]  In cases "where the court knows or has reason to know that an Indian child is involved," ICWA requires the [agency], or other party seeking adoption or foster care placement, to notify "the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention."  [Citations.]

"(3) 'Following changes to the federal regulations concerning ICWA compliance, California made conforming amendments to its statutory scheme regarding ICWA, effective in 2019.  [Citation.]  In [*In re D.S.* (2020) 46 Cal.App.5th 1041], the court explained that the resulting clarification of law, found in part in section 224.2, "creates three distinct duties regarding ICWA in dependency proceedings.  First, from the [agency]'s initial contact with a minor and [her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child.  (§ 224.2, subds. (a), (b).)  Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [agency] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'  ([§ 224.2], subd. (e), italics added.)  Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.  [Citations.]"  [Citation.]

" 'At the first step, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare

7.

department, such as the [agency], the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " [Citation.]' " (*In re H.V.* (2022) 75 Cal.App.5th 433, 436–437.)

The agency is required to make "a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.) Pursuant to ICWA, " 'extended family member' shall be defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of [18] and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent[.]" (25 U.S.C. § 1903(2).)

"If a child welfare agency fails to obtain meaningful information or pursue meaningful avenues of inquiry—by, for example, failing to discover that a parent was adopted, or failing to inquire further after a parent identified an extended family member with more information about the child's potential Indian ancestry—those facts would be relevant to whether the initial Cal-ICWA inquiry is adequate, not whether the inquiry is prejudicial. The conditional reversal rule … clearly distinguishes between the separate issues of whether an inquiry is adequate and whether inquiry error is harmless." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1151.)

Appeals from ICWA findings by the juvenile court are reviewed for substantial evidence. (*In re H.V.*, *supra*, 75 Cal.App.5th at pp. 437–438.) Substantial evidence supporting the findings and orders must be " 'considerable in amount, value or the like; firmly established, solidly based.' [¶] … [¶] It must be reasonable in nature, credible, and of solid value …." (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644.)

Here, as the agency concedes, the ICWA notices did not include all relevant information available to the agency. E.M. was ultimately placed with her maternal aunt,

8.

A.C., and A.C.'s husband, C.C. However, as the record shows, the agency here was aware of multiple relatives of E.M. who should have been the subject of the initial ICWA inquiry, but who the agency did not contact. The record also does not show the agency made any effort to locate E.M.'s paternal relatives, aside from father, and that its efforts to locate father did not include asking E.M.'s other relatives that it had found where father was or if any other paternal relatives were available for inquiry. Also, despite father being adjudicated as E.M.'s father in Merced County and being involved in 15 previous referrals in Merced and Fresno counties, the identities of E.M. and adults involved in the previous referrals were redacted as confidential in the agency's reporting, but the agency's report does not state whether any of those people were people whom the agency was required to contact for purposes of the instant ICWA inquiry. The agency's report also stated information about placing E.M. with a "maternal great[-]uncle and maternal great[-]aunt," but does not specify if this was a reference to A.C. and C.C., with whom E.M. was placed, or some other unnamed relatives. The record also shows mother told the social worker she had two sisters and two brothers, but the report does not name them, nor show whether the agency made any attempt to make an ICWA inquiry of any maternal aunt, uncle, great- aunt, or great-uncle who mother had mentioned. Further, the agency's report does not show it attempted to contact E.M.'s maternal grandfather, who it was informed was still living, for ICWA inquiry purposes. Accordingly, as the record does not show the agency complied with locating and notifying E.M.'s "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent," the juvenile court did not know when it made its finding regarding ICWA whether the agency's ICWA inquiry was complete. (25 U.S.C. § 1903(2).)

In addition, we also agree with the parties that the agency did not fulfill its inquiry obligations pursuant to section 224.2, subdivision (e) insofar as it did not make an attempt to interview known family members regarding ICWA. (§ 224.2, subd. (e);

9.

§ 224.3, subd. (a)(5).) The record shows that even available relatives of E.M. were not subject to the agency's ICWA inquiry, as the record shows the inquiry only included E.M., mother, E.M.'s maternal grandmother, and CA 1. The record also shows that the agency only made an initial inquiry of CA 1 but did not report asking her about the availability of other relatives of E.M. for whom it was required to make an initial ICWA inquiry. This error also requires reversal. (See *In re N.G.* (2018) 27 Cal.App.5th 474, 481–482.)

The failure to include such information was prejudicial error requiring reversal. (See § 224.3, subd. (a)(5)(C) [notice shall include names of all parents, grandparents, and great-grandparents, if known]; *In re A.G.* (2012) 204 Cal.App.4th 1390, 1394–1395.)

As a final matter, the parties have submitted a stipulation indicating there are no appellate issues other than ICWA compliance issues discussed herein and seek immediate remittitur. Accordingly, remittitur shall issue immediately.

## DISPOSITION

The juvenile court's orders finding the agency complied with ICWA inquiry and notice requirements and that ICWA does not apply to E.M. are conditionally reversed and the matter is remanded to the court with directions for the court to vacate its ICWA finding with respect to E.M. and to direct the agency to complete inquiry and notice provisions in compliance with ICWA. If, after the agency does so, the court finds E.M. is an Indian child, the court shall proceed in conformity with ICWA. If the court finds E.M. is not an Indian child, the orders shall be reinstated. Remittitur shall issue immediately.